UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| TYRONE JOHNSTON,<br><br>          Plaintiff,<br><br>     v.<br><br>MERCED DISTRICT ATTORNEY'S OFFICE, *et al.*,<br><br>          Defendants. | Case No. 1:19-cv-00926-AWI-EPG<br><br>**FINDINGS AND RECOMMENDATIONS RECOMMENDING THAT THIS ACTION BE DISMISSED WITH PREJUDICE AS TO THE DISTRICT ATTORNEY AND INVESTIGATING OFFICERS, AND WITHOUT PREJUDICE AS TO ATTORNEY FOSTER**<br><br>(ECF No. 6)<br><br>**OBJECTIONS, IF ANY, DUE WITHIN TWENTY-ONE (21) DAYS** |

Plaintiff, Tyrone Johnston, appearing *pro se* and *in forma pauperis*, commenced this action on July 8, 2019, by filing a complaint under 28 U.S.C. § 1983 alleging law enforcement misconduct in connection with a murder charge against him. (ECF No. 1.) On November 25, 2019, the Court issued a screening order finding that Plaintiff's complaint stated no cognizable claims, and giving Plaintiff leave to amend his complaint. (ECF No. 5)  Plaintiff filed a First Amended Complaint on December 19, 2019, which is before the Court for screening. (ECF No. 6).

For the reasons described below, the Court recommends that Plaintiff's claim for malicious prosecution against the District Attorney, Nicole Silvera, be dismissed based on

absolute prosecutorial immunity. The Court recommends that Plaintiff's claim against Detectives Brum and Vierra be dismissed because the prosecutor's independent decision to charge Plaintiff immunizes them from claims arising from their investigation. The Court recommends that Plaintiff's claim against his attorney, Douglas Foster, be dismissed without prejudice because the Court lacks jurisdiction over this solely state law claim.

Plaintiff has twenty-one days to file objections to these findings and recommendations.

## I. SCREENING REQUIREMENT

Under 28 U.S.C. § 1915(e)(2), in any case in which a plaintiff is proceeding *in forma pauperis*, the Court must conduct a review of the complaint to determine whether it "state[s] a claim on which relief may be granted," is "frivolous or malicious," or "seek[s] monetary relief against a defendant who is immune from such relief." If the Court determines that the complaint fails to state a claim, it must be dismissed. *Id.* An action is frivolous if it is "of little weight or importance: having no basis in law or fact" and malicious if it was filed with the "intention or desire to harm another." *Andrews v. King*, 398 F.3d 1113, 1121 (9th Cir. 2005). Leave to amend may be granted to the extent that the deficiencies of the complaint can be cured by amendment. *Cato v. United States*, 70 F.3d 1103, 1106 (9th Cir. 1995).

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief . . . ." Fed. R. Civ. P. 8(a)(2). Detailed factual allegations are not required, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). Plaintiff must set forth "sufficient factual matter, accepted as true, to 'state a claim that is plausible on its face.'" *Iqbal*, 556 U.S. at 663 (quoting *Twombly*, 550 U.S. at 555). While factual allegations are accepted as true, legal conclusions are not. *Id.* at 678.

In determining whether a complaint states an actionable claim, the Court must accept the allegations in the complaint as true, *Hosp. Bldg. Co. v. Trs. of Rex Hospital*, 425 U.S. 738, 740 (1976), construe *pro se* pleadings liberally in the light most favorable to the Plaintiff,

*Resnick v. Hayes*, 213 F.3d 443, 447 (9th Cir. 2000), and resolve all doubts in the Plaintiff's favor, *Jenkins v. McKeithen*, 395 U.S. 411, 421 (1969). Pleadings of *pro se* plaintiffs "must be held to less stringent standards than formal pleadings drafted by lawyers." *Hebbe v. Pliler*, 627 F.3d 338, 342 (9th Cir. 2010) (holding that *pro se* complaints should continue to be liberally construed after *Iqbal*).

## II.     ALLEGATIONS IN THE FIRST AMENDED COMPLAINT

Plaintiff alleges as follows in his First Amended Complaint:

Plaintiff titles the First Amended Complaint "Atwater Police Department and Detective Brum and Vierra."

Plaintiff alleges that on July 2, 2018, there was an incident involving himself that resulted in the loss of life of Arthur Hudson of Merced CA, and that the loss of life was due to self-defense.

During the investigation into Arthur Hudson's loss of life, Plaintiff alleges that Atwater Police Department Detectives Brum and Vierra violated Plaintiff's civil rights. Plaintiff claims he was falsely arrested.

Plaintiff does not have access to discovery in the case due to a current ruling, so Plaintiff alleges the following by memory.

One female witness called 911 and gave eye-witness information about a crime being committed. Based on her explanation, it was self-defense. The investigating officers are heard laughing at the end of the call. They disregarded this important information.

Rondell Hudson was interviewed by Detectives Brum and Vierra. He was also interviewed by Merced Law Enforcement Agent James Rochester on three occasions. During the first interview, Mr. Hudson gives Detective Brum the same information, with the exception of a few minor details, as the female 911 witness. Rondell Hudson is released.

On the second day of interview of Mr. Hudson, Detectives Brum, Vierra, and Agent Rochester all interview Mr. Hudson. Hudson provides the same information. He is released.

Hudson is summoned for a third interview. This time, he is shown drone footage and asked to explain the information in detail. Rondell Hudson does this in vivid detail from

memory.  Afterwards, Detective Vierra starts to provide details to Hudson that contradict Hudson's statement but omit details from the female 911 caller's statement.  Although the female 911 caller said that a weapon was removed from the scene, the Detectives omitted this information and told Rondell Hudson that they never found a weapon without giving information about why they did not find a weapon.  Similarly, although the female 911 caller said that a second suspect ran away from the scene, the Detectives withheld this information although it would also explain why no weapon was found at the scene.  Rondell Hudson's first statement indicated that there was a mutual incident involving two people with weapons.  This was consistent with the female 911 caller's statement.

Rondell Hudson changed his statement after this questioning.  Rondell Hudson's change of statement led to Plaintiff's false arrest.

The Detectives told Rondell Hudson that he was a suspected accomplice and could be charged as such.  They also told Rondell Hudson that he had two strikes and if he was charged, he would spend his life in prison.  At this time, Rondell Hudson was on an ankle bracelet and could be tracked by law enforcement.  The police strong-armed him into agreeing with at least two false police statements.

Also, the Assistant District Attorney, Nicole Silvera wrongly decided to prosecute Plaintiff.  The criteria for the charge of Malicious Premeditated Homicide are "very high.  Once charged, prosecutors pursue convictions for life in prison or the death penalty.  So, there should be a higher standard than usual for pursuing such a charge, and scrutiny of their discovery must be impeccable.  If there is exculpatory evidence that may put in dispute any of the officers' conduct or the investigation of any information that calls into question the charge, then the DA must exercise caution in proceeding or "Not Charge" based on this information or request a full dismissal in the interest of justice.

D.A. Nicole Silvera knew of the 911 call that explained the situation as self-defense from day 1.  She also knew that the officers threatened the only witness for the prosecution of being an accomplice if he didn't change his statement.  The manner in which the changed statement came about should have concerned the DA.  There is no reason why the DA ignored

these relevant elements of evidence, which violated Plaintiff's constitutional rights not to be arrested or subjected to false prosecution.  Furthermore, Ms. Silvera knew the statements from two totally unrelated witnesses amounted to the same general information.  Once the officers coerced the individual they had subjective control over, the DA held a preliminary hearing to cement the false allegations against Plaintiff.

Also, Douglas Foster was Plaintiff's attorney.  He constantly misled Plaintiff.  He ignored Plaintiff's pleading to send an investigator to collect information.  He wanted a month to send an investigator.  He told Plaintiff he was on vacation during this time.  Mr. Foster came to Plaintiff with an offer he made, under the guise of it being from the DA.  There was never an offer from the DA.  Mr. Foster asked Plaintiff if he would accept 9 years.  Plaintiff refused.  Mr. Foster dragged the case out for six months.  Plaintiff believes Mr. Foster was working with the DA toward Plaintiff's conviction.

Mr. Foster failed to use any relevant information or introduce the 911 call in Plaintiff's favor at the preliminary hearing.  He told Plaintiff as his lawyer that Plaintiff would not be able to use the 911 call as evidence at trial.  This is the reason Plaintiff hired a private attorney.  The private attorney saw that Mr. Foster had been purposefully negligent in Plaintiff's case.  Mr. Loethen, Plaintiff's private attorney, secured Plaintiff's release within 45 days of accepting Plaintiff's case.

### III. ANALYSIS OF PLAINTIFF'S CLAIMS

#### A. Malicious Prosecution

"Federal courts rely on state common law for elements of malicious prosecution." *Mills v. City of Covina*, 921 F.3d 1161, 1169 (9th Cir. 2019*), cert. denied sub nom. Mills v. Covina, CA*, No. 19-321, 2019 WL 5150535 (U.S. Oct. 15, 2019). "California law requires a plaintiff claiming malicious prosecution to establish 'that the prior action (1) was commenced by or at the direction of the defendant and was pursued to a legal termination in his, plaintiff's, favor; (2) was brought without probable cause; and (3) was initiated with malice.'" *Id.* (citations omitted). "Additionally, to maintain a § 1983 action for malicious prosecution, a plaintiff must

show that the defendants prosecuted [him] … for the purpose of denying [him] equal protection or another specific constitutional right." *Id.* (citations and internal quotation marks omitted).[1]

Construing all facts in favor of Plaintiff, as the Court must at the screening stage, Plaintiff has set forth a claim for malicious prosecution, however subject to the immunities discussed below. Plaintiff has claimed that a charge of Malicious Premeditated Homicide was commenced at the direction of the District Attorney, based on the investigation of the Detectives, without probable cause. He also alleges that he was released after being charged.[2]

### B. Prosecutorial Immunity

Prosecutors acting in their official capacities are immune from Section 1983 lawsuits. The Ninth Circuit explained this immunity as follows:

> Absolute immunity is generally accorded to judges and prosecutors functioning in their official capacities. *Stump v. Sparkman,* 435 U.S. 349, 364, 98 S.Ct. 1099, 55 L.Ed.2d 331 (1978) (holding that state circuit judge is immune from suit for all actions within his jurisdiction); *Imbler v. Pachtman,* 424 U.S. 409, 430–31, 96 S.Ct. 984, 47 L.Ed.2d 128 (1976) (holding that state prosecutor had absolute immunity for initiation and pursuit of criminal prosecutions, including presentation of case at trial). This immunity reflects the long-standing "general principle of the highest importance to the proper administration of justice that a judicial officer, in exercising the authority vested in him, shall be free to act upon his own convictions, without apprehension of personal consequences to himself." *Bradley v. Fisher,* 13 Wall. 335, 347, 20 L.Ed. 646 (1871).
>
> Recognizing these considerations, courts have extended the protections of absolute immunity to qualifying state officials sued under 42 U.S.C. § 1983. *Miller v. Gammie,* 335 F.3d 889, 895–96 (9th Cir.2003) (explaining that though § 1983 does not include a defense of immunity, "the Supreme Court has recognized that when Congress enacted § 1983, it was aware of a well-established and well-understood common-law tradition that extended absolute immunity to individuals performing functions necessary to the judicial process"

---

[1] Although Plaintiff claims he was "falsely arrested," the allegations he describes concerns his criminal charge as a result of the investigation, rather than a false arrest. Plaintiff does not describe his arrest. He does not claim there was an arrest without probable cause. The arrest took place ten days after the death of Mr. Arthur Hudson, after investigation described. Thus, the Court believes that the standards for malicious prosecution are the relevant standards in this case.

[2] Plaintiff's allegations may not be sufficient to establish malice. Given the Court's analysis below regarding immunities, the Court need not reach this issue.

(citing *Forrester v. White,* 484 U.S. 219, 225–26 (1988) (superseded by statute))); *Buckley v. Fitzsimmons,* 509 U.S. 259, 268–69, 113 S.Ct. 2606, 125 L.Ed.2d 209 (1993). Indeed, judicial immunity from § 1983 suits is "viewed as necessary to protect the judicial process." *Burns v. Reed,* 500 U.S. 478, 485, 111 S.Ct. 1934, 114 L.Ed.2d 547 (1991). Likewise, the protections of absolute immunity accorded prosecutors reflect the "'concern that harassment by unfounded litigation would cause a deflection of the prosecutor's energies from his public duties, and the possibility that he would shade his decisions instead of exercising the independence of judgment required by his public trust.' " *Id.* (quoting *Imbler,* 424 U.S. at 423, 96 S.Ct. 984).

*Olsen v. Idaho State Bd. of Medicine*, 363 F.3d 916, 922–923 (9th Cir. 2004*). See also Broam v. Bogan*, 320 F.3d 1023, 1028 (9th Cir. 2003) ("A state prosecutor is entitled to absolute immunity from liability under § 1983 for violating a person's federal constitutional rights when he or she engages in activities 'intimately associated with the judicial phase of the criminal process.'"); *Heinemann v. Satterberg*, 731 F.3d 914, 916 (9th Cir. 2013) (upholding district court's finding on summary judgment that the decision to file a criminal complaint against the defendant in state court was protected by absolute prosecutorial immunity.)

Here, Plaintiff has alleged that Assistant District Attorney Nicole Silvera improperly charged him for Malicious Premeditated Homicide despite being aware of certain exculpatory information, including a 911 call and initial witness statement indicating that the person was killed in self-defense.  Because Plaintiff's allegations stem from her actions in her official capacity as prosecutor in his case, Silvera is entitled to absolute immunity from this claim based on the legal standards above.

### C.  Officer Immunity

"It is a well-settled principle that the "[f]iling of a criminal complaint immunizes investigating officers ... from damages suffered thereafter because it is presumed that the prosecutor filing the complaint exercised independent judgment in determining that probable cause for an accused's arrest exists at that time.  A § 1983 plaintiff may rebut this presumption, however, by showing that the district attorney was pressured or caused by the investigating officers to act contrary to his independent judgment. Such evidence must be substantial."

*Harper v. City of Los Angeles*, 533 F.3d 1010, 1027 (9th Cir. 2008) (internal citations and quotations omitted).

Here, Plaintiff alleges that Detectives Brum and Vierra are liable for improperly investigating the death of Arthur Hudson by ignoring relevant information in a 911 call that indicated self-defense, and by improperly pressuring a witness to change his account of events, leading to a false charge against Plaintiff.  Under the legal standards above, the investigating officers are immune from this charge because it is presumed that the prosecutor made the determination to charge Plaintiff.

Moreover, the facts even construed in favor of Plaintiff do not establish that the District Attorney was improperly pressured or caused by the officers to act contrary to her independent judgment  On the contrary, Plaintiff alleges that "D.A. Nicole Silvera had the discovery from the onset of the case, she knew of the 911 call that explained the self-defense from day 1.  She also knew the officer's threatened the only witness for the prosecution with being an accomplice if he didn't change his statement." (ECF No. 6, at p. 3-4).

**D.  Professional Negligence**

Plaintiff also alleges that his attorney, Douglas Foster, was purposefully negligent in his defense.

Under California common law, the elements of a claim for professional negligence are: "(1) the duty of the professional to use such skill, prudence, and diligence as other members of his profession commonly possess and exercise; (2) a breach of that duty; (3) a proximate causal connection between the negligent conduct and the resulting injury; and (4) actual loss or damage resulting from the professional's negligence." *Osornio v. Weingarten*, 124 Cal.App.4th 304, 319 (2004).

Plaintiff's allegations may state a cause of action under California law for professional negligence under these legal standards, but the Court does not reach this question because any claim would be under state law, and without a viable federal claim, this Court lacks jurisdiction over purely state law claims.  28 U.S.C. § 1367.  The Court recommends that this claim be dismissed without prejudice to Plaintiff refiling his claim in state court.

## IV. CONCLUSION AND RECOMMENDATIONS

For the reasons described above, the Court recommends that Plaintiff's claim for malicious prosecution against the District Attorney, Nicole Silvera, be dismissed based on absolute prosecutorial immunity. The Court recommends that Plaintiff's claim against Detectives Brum and Vierra be dismissed because the prosecutor's independent decision to charge Plaintiff immunizes them from claims arising from their investigation. The Court recommends that Plaintiff's claim against his attorney, Douglas Foster, be dismissed without prejudice because the Court lacks jurisdiction over this solely state law claim.

The Court does not recommend granting further leave to amend because the Court previously provided Plaintiff with applicable legal standards and an opportunity to amend his complaint, and further amendment would be futile.

Accordingly, the Court HEREBY RECOMMENDS that:

1. Plaintiff's claim for malicious prosecution against the District Attorney, Nicole Silvera, be dismissed with prejudice based on absolute prosecutorial immunity;
2. Plaintiff's claim against Detectives Brum and Vierra be dismissed with prejudice because the prosecutor's independent decision to charge Plaintiff immunizes them from claims arising from their investigation;
3. Plaintiff's claim against his attorney, Douglas Foster, be dismissed without prejudice because the Court lacks jurisdiction over this solely state law claim
4. The Clerk of the Court be directed to close this case.

These findings and recommendations are submitted to the district judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within twenty-one (21) days after being served with these findings and recommendations, Plaintiff may file written objections with the court. Such a document should be captioned, "Objections to Magistrate Judge's Findings and Recommendations." Plaintiff is advised that failure to file objections within the

specified time may result in the waiver of rights on appeal. *Wilkerson v. Wheeler*, 772 F.3d 834, 839 (9th Cir. 2014) (quoting *Baxter v. Sullivan*, 923 F.2d 1391, 1394 (9th Cir. 1991)).

IT IS SO ORDERED.

Dated:   **May 6, 2020**                    /s/ Erica P. Grosjean
                                                    UNITED STATES MAGISTRATE JUDGE